This case is in re the marriage of Gallagher for the appellant Mr. Zerlini and for the appellant Mr. Babb. You may proceed. Good afternoon your honors. May it please the court my name is Thomas Zerlini and I represent the respondent appellant Sandra Isadema Labarco. Sandra urges this court to vacate the trial court to reduce the amount of her college support or enter a reduced valuation of her daughter Courtney's college expenses. We have a couple of reasons why we believe this should be done. First, your honors, it was an abuse of discretion by the trial court to order Sandra to pay $700 a month in college support. Second, it was against the manifest way of the evidence for the trial court to find that Courtney's college expenses amount to $1,800 per month. Your honors, if you'll indulge me I'd like to briefly go over the basics of the case so I may reference them more easily in my arguments. Sandra and the petitioner were married for 27 years and they had one child, Courtney, when they were divorced. The judge gave full custody to petitioner over Courtney and ordered no child support to be entered because of the great disparity in incomes. The basic property dispersal was this. Petitioner was awarded the marital home in Pontiac, all of its contents, all of its furnishings. He was awarded 25 acres of farmland in Ramsey, Illinois, a Chevy Suburban, and half of his pension. Sandra received a house with 37 acres in Ramsey and half of petitioner's pension along with some savings. Shortly after that, Sandra wanted to gift that house in Ramsey, Illinois, to her daughter, Courtney, and she did so. However, Courtney was a minor at the time and due to that she gifted the house to petitioner in his name. Thereafter, Sandra inherited about $250,000 from her parents. She also married Richard LaBarbera, who is a laborer out of a union home, but who has been unemployed since December. As to Sandra's inheritance, she had used that money to start all of it. After she gifted the house back to her daughter, she was effectively homeless. For a brief period, she had to pay for rent in Chicago. She eventually moved back down to Gray's Lake and had to buy a house. She had to buy all new furnishings for that house. She had to buy a car. She had to buy pretty much everything. Thereafter, the petitioner filed a petition for child support. The trial court found that Sandra owed $5,293 in retroactive child support. That has all been paid. We do not appeal that court. The aspect we do appeal is the amount of money that Sandra has to pay for Courtney's college expenses. Where did the court get the authority to enter the $5,200 judgment for retroactive child support, which covered a time period prior to the filing of the request for child support? It's actually a good question, Your Honor. I haven't thoroughly looked through that issue. If I recall correctly, the basics was the court found no need for child support initially and then overruled that ruling due to... This case has been continued a few times, but didn't the court ask the attorneys to address this issue? I am not aware of that, Your Honor. I suppose... Was there a letter sent to our office addressing that? I'm thumbing through my file here, and I can... I'll let you go on with your argument, but I'll come back to that. I'm pretty sure that this court had asked the attorneys to be prepared to address that issue at orals today, but I'll continue to look through the fact sheets and the rest of my file, and you may go ahead with your argument. Thank you, Your Honor. I'm sorry about my ignorance as to your question. Sandra was ordered to pay $700 a month. I believe that is abusive discretion, and my principal belief is because of the huge disparity in incomes between the 2012 was the very first year Sandra made above $20,000. First time ever. Petitioner, on the other hand, has never made less than $100,000. Never. That's an $80,000 gap right there, Your Honor. My contention is that right there is no means for finding of equal support amongst the parties for college support. And I believe that was reiterated in the case of In Re Marriage Cook, where court held, the second district held, that a finding of equal support was an abusive discretion where one spouse earned more than 60% than a non-custodial spouse. Petitioner cites In Re Marriage of Dikey for the notion that Sandra's current husband, Richard, should have his income imputed to Sandra. And, to be fair, Petitioner relies on the statute which says financial resources of either parent. And Dikey does say that the spouse's income should be imputed. However, that is impossible for the court to divide the assets. In addition, I would note that the trial court specifically declined to impute the income. However, for argument's sake, should we impute Richard's income to Sandra? Richard averages around $40,000 a year. Sandra averages, as I noted before, $20,000 a year. Those, of course, equal $60,000. And Petitioner has never made less than $100,000 for the time specified in this case. It's still at 60%, as evidenced in Cook, where the court found it was an abusive discretion to find equal support. In addition, Your Honor, I would like to note that Sandra simply cannot afford it. I understand the court might be worried when it sees a number as $250,000 in inheritance. And perhaps that's why the trial court ordered equal payments. However, that money is gone. Sandra testified in 2012 that at that time she had $20,000 left. She no longer has anything. And as I said before, she was effectively homeless. She had to use that money to buy a new house, a new car. She had to furnish that house. There has been no contention by either side that she necessarily wasted the money. We're not talking trips to Europe. We're not talking yachts. We're talking basic necessities. As to the second issue that I raised, I believe it was against the manifest way of the evidence for the trial court to find that Courtney's college expenses amount to $1,800 per month. 750 ILCS 5-513, paragraph B, specifically mentions the financial resources of the trial should be taken into consideration when finding the college support payments. The trial court only alluded to, in its order, scholarships that Courtney had earned. It did not reference any savings bonds, any cash scholarships, any CVs. It specifically did not reference $60,000, the home in Ramsey that I alluded to earlier, that Sandra gifted to Courtney. I believe Petitioner is going to state that that house to Courtney was in consideration for $25,000, which is in the original judgment order of dissolution. And that $25,000 is mentioned in that judgment order. However, there was an addendum to the judgment order. And that addendum speaks to the transfer between the Ramsey property. And there, the $25,000 is never contemplated. It's never spoken of at all. The $25,000 was, in fact, so that Sandra would not take any maintenance from Petitioner. I would also note that Sandra was counseled, frankly, by our firm not to just transfer the house over to Petitioner. But at the time, Sandra's parents had recently passed away. She had divorced after 27 years of marriage. She was estranged from her daughter. She received counsel not to transfer this house over. However, she wanted to gift that to her daughter. And the record backs this up, because she wanted her daughter to be able to be close to her horses. I believe that Sandra loved her daughter so much. And her mother's love was immune to even the soundest legal advice. And that is why she gifted that house over to the Petitioner. And I think this situation here, and especially the $60,000, would have been enough to cover a great deal, at the least, of Courtney's college expenses. And I think this mirrors Westerberg v. Stevens, where the 2nd District found that a non-minor child with substantial financial capabilities could contribute to their own college expenses. I would note that between the years 2009 and 2012, Sandra made an average of $15,765. Courtney's college expenses, as the trial court noted, are $16,800. Courtney, effectively, is making more money than her mom did from 2009 to 2012. Now, I would love to present to the court a case that cites that that is outlandish, that is an abuse of discretion. I can't imagine a case that's come before a court with numbers such as I just stated. I would like to close out, Your Honor, and ask that because of the huge income disparity, because of the $60,000 gift to the house, that this trial court vacate the trial court's order and reduce the amount of Courtney's college valuation, or reduce the amount of Sandra's college support. Thank you. You may proceed. May it please the court and counsel, I'm David Babb. I'm the attorney for the appellee petitioner, Robin Gallagher. I will not belabor the point of reciting the facts, since you've already read two statements of fact, as well as the common law record. I do want to just point out a few things with regard to the appellant's argument, and I would note and I would acknowledge that the court did notify counsel of the fact that we needed to be able to address the issue concerning the authority to go back and issue a trial court red flag from the date of the judgment to the date of the petition that we filed in March of 2011. So I do acknowledge the fact that we received at least that, and I'm ready to address that question. Excellent. With regard to the arguments of counsel, I would note a few things. With regard to the fact that it stated that no support was ordered because of the great disparity of income, that really touches upon the question that we were asked to address. That's not really the case. If the court were to take a look at the order that was entered that awarded the Rector Act of Child Support, it was done for two basic reasons. The first reason is because when the court, the second trial judge, in this case reviewed it, Judge Travers, reviewed the judgment, he said in the actual applicable paragraph, paragraph 2B, I believe, of the judgment, that together with the language with regard to the no visitation unless the child wishes language, there was the last sentence of that same paragraph, a sentence that basically said no support would be obligated to be paid by the mother. And then secondly, with regard to that, the court indicated that because there was no explicit findings requiring the Section 505 for a deviation of the child support guideline amounts at that time that the mother would have been making, that the court felt that the order was void. And if it is void, I would submit the fact that Section 510 does not apply because if it's void, there is no order to modify with regard to the child support. I would indicate that with regard to that, there are three cases the court can take a look at. In re-emerge of Perry, E-R-R-Y, 260 Illinois Appellate 3rd, 374. Also in re-emerge of Sawicki, 346 Illinois Appellate 1107. And lastly, in re-emerge of Sheetz, S-H-E-E-T-Z, that's 254 Illinois Appellate 3rd, 695. Basically, when you take a look at those three cases together, what they basically indicate is the rationale is that a trial court cannot actually approve of an agreement that's in excess of what the statute would permit. In other words, the trial court cannot advocate its responsibility to safeguard the best interest of a child when it comes to the issues of child support by just rubber-stamping agreements that the parties may approve of because they have their own interests and could bargain away the best interests of the child. And that would include agreements. And I would note that it indicates in the re-emerge of Sheetz, the language is in the reasoning that the order is void if, in fact, the trial court could not enter that order absent an agreement. I would indicate that's exactly what we have here. We have what is apparently from the language tied together in those two paragraphs. Whether it's in our court or not, we have to go with based upon what the language says there. I was not the attorney involved at that time. The trial judge was not the trial judge that was hearing the case at that time. You look at the language of the judgment itself, the language about no child support is in the same paragraph as the language about no visitation. It should never have happened if they weren't conjoined. That was one reason the trial court indicated that he thought that that was, therefore, a violation of public policy because it appeared that, in fact, the child support was not excused by the trial judge because of any disparity of income. If that were the case, why weren't there findings? Why wouldn't counsel, actually Mr. Zillian, whose office was representing him at the time, put that in there to protect the mother? They indicate there was explicit findings of the fact that because of the disparity of income, we would deviate from the guidelines downward to as much as zero, which is what they did. But that didn't happen. So we have, instead, language that conjoins the no visitation with no child support. That's one of the reasons why the trial judge indicated that it was void. The second reason the court indicated it was void was because of the lack of requisite findings. The statute is very clear. It indicates if you're going to deviate from the guidelines, the trial court shall, mandatory, shall basically make those findings. It did not make those findings. So I believe, therefore, to address the second question and also to indicate with regard to why I think the argument is flawed at the beginning would be the fact that the disparity of income had nothing to do with whether or not child support was awarded or not awarded during their initial judgment. As far as not appealing, I would note that they concede yet again, as they did in their brief, that they're not appealing the award retroactively to the amount. So the question arises, I think, whether or not a party can actually waive that argument. I think they have waived it, and I think they can. With regard to disparity of income as being basically the reason, that appears to be the only reason why they're challenging the issue with regard to the award that the trial judge made with regard to the college contribution. I would note, as we've indicated repeatedly, as the arguments that we made in writing to the trial judge indicated, as we made basically in our brief that we followed with this court, it totally ignores the fact of how much assets she had. Dyke, again, I think the counsel misapplies our use of Dyke. Dyke was basically to show that this very court, this district of the appellate court, has found that with regard to this specific issue about college contribution, the court should consider the assets or the financial resources and resources it defined to include property that can be liquidated, basically, to meet the needs of a party. And what does the record show? The record shows that she has over $150,000 by her own testimony of equity in a house. This was after she was told if she liquidated property she was awarded during the marriage and put it into a house, she did so at her own risk, that that would still be considered to be assets available for her to contribute for her daughter's college education. She did it anyway. Now she comes in and tries to say, I cannot afford to contribute toward the college education because I don't make enough income. Totally ignoring the fact that this session indicates it's not just income, it's property. And she has substantial property, both awarded during the marriage, inherited after the marriage, and that she still retains substantial equity in that. So in essence, her argument appears to be since she now holds the property in joint tenancy with her current husband, enable me to not contribute toward my college expenses for my daughter who I knew was petitioning for these contributions at the time I did this in order to make a gift of $75,000 to my second spouse so I don't have to pay even as much as $33,000 for four years of college education for my daughter. That's really in essence what the argument boils down to. I would indicate that when the court takes a look at all of the assets that she has, the net equity that she has, the fact that she has vehicles without debt, the fact that she has a contribution from her spouse's income, these are all matters that can be considered in addition to just her income. And her income, our counsel's own argument in a reply brief, is actually at minimum $21,000 a year. As the trial judge already indicated, he went through the factors very carefully. His order specifically went through all four factors. The court also had the 59 stipulated exhibits. The exhibits went through great detail of our... What about the disparity in income that Mr. Zerlean spoke about? The disparity of income is in fact, I would say, accurate or more accurately related with regard to what I have in my brief as far as the numbers. So is there a great disparity of income? Yes. If that were the only factor to consider, he would have a much better argument. But I indicate, as I tried to say, property distribution that she has. She has property, property that could be used to actually obtain credit in order to pay for these things. If the court just were to take a look at her income alone, because they want to style the argument, they'd have a good argument. But that's not the only factor, and the statute clearly indicates that. And I think once that's considered, does she have the ability? I would answer, yes, she does have the ability to pay that. Was it an abuse of discretion then? I don't think it could be found to be abuse of discretion. Whether or not this court believes the $700 was too high, these particular judges on this panel would not have awarded that much is not the standard. The standard was, would any reasonable person on these facts have awarded that? And I believe the answer is yes. When you consider the property aspect of this, and consider one of the aspects of the property or assets, is in fact access to the second income for her household expenses. Her own testimony is indicated in the briefs are that when her husband works, he makes enough money to pay for all the household expenses. Her financial affidavit at one point indicated the only expense she had that she was paying for was the house payment. Everything else basically she indicated was zero as far as her expenses were. That would indicate that she had more than enough money from her admitted income in which to pay the house payment, her only admitted expense, plus make the $700 contribution for her daughter's college expenses. Would the trial court give any credit towards college expenses from the gift of the 25 acres in the house? I'd discern that from the order that he entered. I think that as indicated, it certainly was one of the 59 exhibits that was submitted. So was he aware of it? Absolutely, he was aware of it. Both by the testimony up until the time that it was truncated to stop when we agreed to proceed on stipulated exhibits and the exhibits only from that point forward. So the court was well aware of it. What was the value of the 25 acres in the house? Pardon me? What was the value? They asserted that the difference in value was $60,000. That was what their assertion was in the exhibits. Then there was $25,000 and I would indicate that the court took a look at the judgment language. Both the addendum and the judgment were entered the same day. What was going on with regard to the negotiations that led to an addendum the very same day as the initial judgment following just two weeks later the marital settlement agreement? I have no idea with regards to that. We have only the testimony of the mother with regards to what her thoughts were and her testimony by the admission of her counsel was confused at best. When I tried on redirect examination to ask her, and it's in the record there, with regard to did I understand your testimony correctly, that you're now saying that it was in exchange for the $25,000, she answered in the affirmative, then turned around and contradicted herself basically at the next recross of her own counsel. What, therefore, was going through her mind? Who knows at this point? Who knows? With regard to Westerberg, I would point out to the court that in Westerberg we're talking about an issue in which basically the child made ten times the amount of the school expense, the only school expense noted in the case. It was about $200 a semester and the child was making ten times that amount and the child was living with one of the parents at the time. I would note that the other cases, Gray and the others that are cited, each one of those is distinguishable. Most of those are support cases only and in support cases, child support cases, you do not consider the property. Every one of those cases is distinguishable just by the fact that we're under a Section 513 case, not a Section 505 case, and, therefore, you can consider and should consider the property and resources of the mother, including the income of the second spouse, which is not something that would be appropriate to consider in a support case at this time. Those distinctions, I think, are significant because absent those factors, the argument of counsel will be dead on. But that's not the case. We, therefore, believe that the court did not abuse its discretion in the award of a contribution for college expenses, nor in the amount of the $700. As to the manifest weight argument about the $1,800, I would note that where we stopped was when Mother broke down in a redirect of testimony as an adverse witness. Her counsel then agreed to proceed on stipulated exhibits and we admitted those exhibits and to proceed on those exhibits only. Now the argument is that somehow that doesn't carry the weight. We bear the burden of basically the preponderance to show our persuasion of the fact that we can't, what the amounts are. The burden then shifts for them to meet that under the case law. Did they do that? I don't think so. I think if the court were to take a look carefully at those exhibits, we detail in great detail, especially when we read Exhibits 16 through 19A, our Exhibits 16 through 19A, what those expenses are, what they were for, what was being anticipated. We updated them at least three times as we went from estimates to actual expenses to show what the expenses were as compared with the initial estimates that were done in June before she started school. Did they know what they were? Yes. And I would note, as my argument in the brief indicates, we went through great detail to show that the $1,800 is not a mystery. It's easy to get a number. If you take a look at the exhibits that were submitted, every monthly expense adds up to about $1,446 in change per month. If you take a look at the yearly amounts, amortize those, divide by 12, you get within $4 of the $1,800 payment. So was it against the manifesto of the evidence? I don't think so. The exhibits show, in fact, that it was counsel, her mother had a chance to rebut it, did not. Did not. And now it comes forward and says somehow they don't adequately satisfy with regards to her burden. And I would admit, in fact, that if they felt that was the case, why didn't they submit any evidence to show that the amounts, as they argue in their brief, is excessive? No evidence was ever brought to indicate that any of those expenses are inflated or excessive. No evidence was ever brought on their part to indicate that were not reasonable. Is it expensive to pay for child care school? Absolutely. Having been the father of one that's doing it for the second time, it's very expensive to do that. And expenses really seem to balloon out of control when you do it with all the add-ons. I would note that the expenses that were awarded, with regard to the argument that it's equal, it's not equal. Even the judge acknowledged it's not equal. When you look at the order, he says the, quote, eligible expenses as he defined them was not even as much as what the expenses identified in Section 513 would allow. Father, he already admitted, was the fact he was going to provide the health insurance, pay for the non-insured medical, provide for the car, pay for the car insurance. So was it anticipated with the fact that even though father made more money, he was only going to pay the $700, the same as mother? No, it was not. Because the evidence was already there that he was already paying those additional expenses and providing those things himself out of pocket. So it was never intended that it be equal, nor is it equal. We therefore believe that we have met the weight of the evidence with regard to the manifest weight is not something that they can prove, and therefore we believe that the court should affirm the order. Thank you. Thank you. Rebaul? Thank you, Your Honor. Your Honor, I would like to first start off and apologize again to the court for not being adequately prepared. This case was transferred to me, and apparently I didn't do a good enough review of the case, and all my preparation time was focused on the wrong issues. I apologize. It seems to me Petitioner Apelli's argument is that because Sandra owns a home, she should have to pay the exact same amount as the Apelli, that she should be homeless or face such circumstances until she can make the adequate payments. I think that's totally incorrect. The Apelli was awarded two homes in the judgment. Other acreage, Sandra had no home. Now she has a home, and because she has equity in her home, the payment shouldn't be changed. The Apelli conveniently leaves out the fact that the financial resources of his client involved two homes, involved income over $100,000 a year. As to the second argument, that we did not present evidence that was excessive, our argument is that the trial court did not take into account $60,000 home transfer. That is the evidence we are presenting, that the trial court failed to take into account an extremely substantial amount of money. I think a reasonable review of the record shows that Sandra was transferring that home to her daughter, Corbyn. She testified to that fact. This idea that this is why she was doing this in order to turn down maintenance is incorrect. She was gifting the house to her daughter. She made a mistake in gifting it to the Apelli rather instead. I don't understand that. Can you explain it? I've been taking about a month trying to understand the whole situation myself. There was a judgment order filed. Shortly thereafter, there was an addendum to the judgment. In the original judgment, Sandra was awarded a home in Ramsey in some the petitioner was also granted some acreage there. Shortly thereafter, they exchanged. Sandra got more land when the petitioner got the house. The exchange was basically, and I don't think the Apelli is going to pretend this, is about a $60,000 difference. Apelli in his brief argues that the $60,000 difference was due to a $25,000 amount that was listed in the original judgment. I don't know if I've clarified things. As I said, the original judgment... I understand how if you're gifting to one person, you actually transfer the title to another person. She was gifting it to her daughter. Her daughter was a minor at the time. So she gifted it to her daughter's father, who was the Apelli. It's not the most sound thing to do. I think there are ways to make a transfer. There certainly are. Outside of transferring to, in this particular matter, the opposing party in litigation. I can't contend with that, Your Honor. I honestly can't. Apelli makes a great argument that why not put in a trust? Why not do something like that? I can only say at the time... They may have been tired of paying lawyers at that point. Yeah. Ms. Eustadine was estranged from her daughter, and she wanted to do something to give it to her. Thank you, Your Honor. One more time, I would like to apologize. I hope the court doesn't hold my negligence. Mr. Zerley, it looks like the notice went to Don Schieffer, I assume. He's in your firm. We're not second-guessing on whether Mr. Schieffer passed that information on to you, but your firm did have notice that we would have liked to have heard an argument regarding 750-IL-CS-5-Certified TMA. My apologies. Mr. Schieffer actually left our firm. He didn't receive the judgeship. Thanks to both of you.